1   Patrice L. Bishop (182256)
service@ssbla.com

2   **STULL, STULL & BRODY**
9430 W. Olympic Blvd., Suite 400

3   Beverly Hills, CA  90212
Tel:310-209-2468

4   Fax:310-209-2087

5   *Counsel for Plaintiff*

6   [Additional Counsel on Signature Page]

7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11

| | |
|---|---|
| 12 RYAN BANKS, LAUREN WEINTRAUB, ANNA LUNA, ALLISON VARNELL, AMY | Case No.: 18-cv-00241 |
| 13 BROWN, MATTHEW HOMONOFF, JESSICA GREENSHNER, ROBERT | **COMPLAINT** |
| 14 MONTGOMERY, LAURA CICCONE, MATTHEW SHASKE, ANNAMARIE | **CLASS ACTION** |
| 15 VINACCO, THOMAS CICCONE and DALE JOHNSON, individually and on behalf of all | **JURY TRIAL DEMANDED** |
| 16 others similarly situated, | |
| 17             Plaintiffs, | |
| 18      v. | |
| 19 | |
| 20 APPLE, INC., | |
| 21             Defendant. | |

22   .

23

24

25

26

27

28

COMPLAINT
Case No. 18-cv-00241

Plaintiffs Ryan Banks, Lauren Weintraub, Anna Luna, Allison Varnell, Amy Brown, Matthew Homonoff, Jessica Greenshner, Robert Montgomery, Laura Ciccone, Matthew Shaske, Annamarie Vinacco, Thomas Ciccone and Dale Johnson ("Plaintiffs"), individually and on behalf of the Classes defined below, allege the following against Apple, Inc. ("Apple" or the "Company") based upon personal knowledge with respect to themselves and based upon or derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## **NATURE OF THE ACTION**

1.     Plaintiffs bring this class action against Apple for its failure to disclose that the Company has been purposely slowing down the processor of certain models of its iPhone and iPad devices (the "Affected Devices") through its iOS 10 updates and iOS 11 updates (the "iOS updates") that were released between January 23, 2017, and December 13, 2017.  On December 20, 2017, Apple confirmed that the Company had in fact been slowing the performance of the Affected Devices.

2.     The following iPhone models support and are compatible with the iOS updates and have been affected by the iOS updates: iPhone 5, iPhone 5c, iPhone 5s, iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, iPhone SE, iPhone 7 and iPhone 7 Plus (the "Affected iPhones").

3.     The following iPad models support and are compatible with the iOS updates and have been affected by the iOS updates: 12.9-inch iPad Pro (2nd generation), 12.9-inch iPad Pro (1st generation), 10.5-inch iPad Pro, 9.7-inch iPad Pro, iPad air 2, iPad Air, iPad (5th generation), iPad (4th generation), iPad mini 4, iPad mini 3, and iPad mini 2 (the "Affected iPads").

4.     On December 20, 2017, Apple confirmed in a statement that the Company's iOS updates have, in fact, slowed the performance of iPhones devices, interfered with their normal usage, and limited their performance under certain conditions to prevent Affected Devices from reaching their full processing power in an effort to protect the Affected Devices from the effects of battery degradation.

5.     Instead of enhancing the performance of the Affected Devices through iOS updates which are compatible and supportive of the devices' operating systems, as Apple had represented,

– 1 –

1   Apple distributed iOS updates which significantly and negatively interfered with the Affected

2   Devices' performance, including the slowing of the Affected iPhones and Affected iPads to the

3   point of significant lag time and/or interference with ordinary use. Moreover, by failing to disclose

4   previously that it was intentionally slowing down the performance of older devices to compensate

5   for and protect Affected Devices from the damaging effects of battery degradation, Apple

6   disregarded the rights of Plaintiffs and members of the proposed classes in order to cause

7   consumers to upgrade their iPhones and iPads to newer models.  In doing so, it also intentionally

8   failed to inform owners of Affected Devices of better ways to safely and efficiently use their

9   devices with aging batteries, such as replacing the battery of an older device.

10      6.      As a result of Defendant's wrongful actions, Plaintiffs and members of the

11   proposed class and sub-classes have been injured.

### JURISDICTION AND VENUE

13      7.      ***Subject Matter Jurisdiction.***   This Court has subject matter jurisdiction over this

14   action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy

15   exceeds $5 million, exclusive of interest and costs. There are more than 100 putative class

16   members. And, at least some members of the proposed Class have different citizenship from

17   Apple.

18      8.      ***Personal Jurisdiction.***   This Court has personal jurisdiction over Apple because

19   Apple is incorporated under the laws of the State of California and is headquartered in Cupertino,

20   California.

21      9.      ***Venue.***   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because

22   Apple resides in this District and a substantial part of the events, acts, and omissions giving rise to

23   Plaintiffs' claims occurred in this District.

### THE PARTIES

25   **Plaintiffs**

26      10.     Plaintiff Ryan Banks ("Banks") is a resident of the State of Arizona.  Prior to

27   purchasing an iPhone 6s, Banks owned and operated an iPhone 5.  Over time, Banks noticed

28   significant slowdowns of the speed in the operation of his iPhone 5 as well as other operational

– 2 –

issues that negatively affected the performance of his iPhone 5 after certain iOS updates were issued to his phone. As a result of the diminished performance of his iPhone 5, Banks purchased an iPhone 6s.  Presently, his iPhone 6s is experiencing the same slowdowns and operational issues that he experienced with his iPhone 5.

11.    Plaintiff Lauren Weintraub ("Weintraub") is a resident of the District of Columbia. Prior to purchasing an iPhone 7, Weintraub owned and operated an iPhone 6.  Over time, Weintraub noticed significant slowdowns of the speed in the operation of her iPhone 6 as well as other operational issues that negatively affected the performance of her iPhone 6 after certain iOS updates were issued to her phone. As a result of the diminished performance of her iPhone 6, Weintraub purchased an iPhone 7.

12.    Plaintiff Anna Luna ("Luna") is a resident of the State of California.  Luna owns and operates an iPhone 6.  Over time, Luna has noticed significant slowdowns of the speed in the operation of her iPhone 6 as well as other operational issues that negatively affect the performance of her iPhone 6.

13.    Plaintiff Allison Varnell ("Varnell") is a resident of the State of Georgia.  Prior to purchasing an iPhone X, Varnell owned and operated an iPhone 7.  Over time, Varnell noticed significant slowdowns of the speed in the operation of her iPhone 7 as well as other operational issues that negatively affected the performance of her iPhone 7 after certain iOS updates were issued to her phone. As a result of the diminished performance of her iPhone 7, Varnell purchased the iPhone X.

14.    Plaintiff Amy Brown ("Brown") is a resident of the State of Hawaii. Brown owns and operates an iPhone 6.  Over time, Brown has noticed significant slowdowns of the speed in the operation of her iPhone 6 as well as other operational issues that negatively affect the performance of her iPhone 6.

15.    Plaintiff Matthew Homonoff ("Homonoff") is a resident of the State of Iowa. Homonoff owns and operates an iPhone 6s.  Over time, Homonoff has noticed significant slowdowns of the speed in the operation of his iPhone 6s as well as other operational issues that negatively affect the performance of his iPhone 6s.

– 3 –

16.    Plaintiff Jessica Greenshner ("Greenshner") is a resident of the State of Indiana. Prior to purchasing an iPhone 8 Plus, Greenshner owned and operated an iPhone 6. Over time, Greenshner noticed significant slowdowns of the speed in the operation of her iPhone 6 as well as other operational issues that negatively affected the performance of her iPhone 6 after certain iOS updates were issued to her phone. As a result of the diminished performance of her iPhone 6, Greenshner purchased the iPhone 8 Plus.

17.    Plaintiff Robert Montgomery ("Montgomery") is a resident of the State of Maryland. Montgomery owns and operates an iPhone 6. Over time, Montgomery has noticed significant slowdowns of the speed in the operation of his iPhone 6 as well as other operational issues that negatively affect the performance of his iPhone 6.

18.    Plaintiff Laura Ciccone ("L. Ciccone") is a resident of the State of Massachusetts. L. Ciccone owns and operates an iPhone 6s. Over time, L. Ciccone has noticed significant slowdowns of the speed in the operation of her iPhone 6s as well as other operational issues that negatively affect the performance of her iPhone 6s.

19.    Plaintiff Matthew Shaske ("Shaske") is a resident of the State of North Dakota. Prior to purchasing 3 iPhone 7s for himself, his spouse and his son, Shaske owned and operated an iPhone 6. His spouse and son operated an iPhone 6 as well, which Shaske had purchased for each of them. Over time, Shaske, his spouse and his son noticed significant slowdowns of the speed in the operation of their iPhone 6's as well as other operational issues that negatively affected the performance of their iPhone 6's after certain iOS updates were issued to these phones. As a result of the diminished performance of these iPhone 6's, Shaske purchased 3 new iPhone 7's for himself, his spouse and his son.

20.    Plaintiff Annamarie Vinacco ("Vinacco") is a resident of the State of Utah. Vinacco owns and operates an iPhone 6 Plus and an iPad Pro. Over time, Vinacco has noticed significant slowdowns of the speed in the operation of her iPhone 6 Plus and iPad Pro as well as other operational issues that negatively affect the performance of her iPhone 6 Plus and iPad Pro.

21.    Plaintiff Thomas Ciccone ("T. Ciccone") is a resident of the State of Washington. T. Ciccone owns and operates an iPhone 6s. Over time, T. Ciccone has noticed significant

– 4 –

1  slowdowns of the speed in the operation of his iPhone 6s as well as other operational issues that

2  negatively affect the performance of his iPhone 6s.

3       22.    Plaintiff Dale Johnson ("Johnson) is a resident of the State of Wisconsin.  Prior to

4  purchasing an iPhone 6 Plus, Johnson owned and operated an iPhone 6.  Over time, Johnson

5  noticed significant slowdowns of the speed in the operation of his iPhone 6 as well as other

6  operational issues that negatively affected the performance of his iPhone 6 after certain iOS

7  updates were issued to his phone. As a result of the diminished performance of his iPhone 6,

8  Johnson purchased the iPhone 6 Plus.  Presently, his iPhone 6 Plus is experiencing the same

9  slowdowns and operational issues that he experienced with his iPhone 6.

10  **<u>Defendant</u>**

11       23.    Defendant Apple is a corporation that was created under the laws of the State of

12  California and has its principal place of business in Cupertino, California.

13  **<u>STATEMENT OF FACTS</u>**

14       24.    Apple periodically releases iOS updates for their iPhones and iPads to the public.

15  Following iOS updates to the Affected Devices, Plaintiffs and putative class members began to

16  experience significant slowdowns with their iPhones and iPads, delayed responses to touch

17  interactions and application ("Apps") launches, and other performance problems.

18       25.    In early 2017, Apple iPhone owners of the iPhone 5, 6, 6s, and 6s Plus and 7

19  devices complained to Apple that their phones were spontaneously shutting down, even though

20  they had sufficient battery. This usually occurred when the user was using his or her phone for

21  something that required a burst of power — such as in the middle of a game, or when

22  downloading an App.  In order to fix this "bug," Apple introduced an update to its operating

23  system software, iOS 10.2.1.  This update fixed the shutdown issue in some cases but also slowed

24  those iPhones down significantly causing Plaintiffs and members of the proposed class and sub-

25  classes to experience issues such as delays in typing text messages and a lag in the loading of

26  emails, to name just a few.

27

28

– 5 –

26.    In a Reddit post, in and around the second week in December, an iPhone user suggested that the iPhone battery might be to blame for the slowness problems.  He stated the following:

> My iPhone 6S has been very slow these past few weeks, and even after updating multiple times, it was still slow. Couldn't figure out why, but just thought that iOS 11 was still awful to me. Then I used my brother's iPhone 6 Plus and his was... faster than mine? This is when I knew something was wrong. So, I did some research, and decided to replace my battery. Wear level was somewhere around 20% on my old battery. I did a Geekbench score, and found I was getting 1466 Single and 2512 Multi. This did not change whether I had low power mode on or off. After changing my battery, I did another test to check if it was just a placebo. Nope. 2526 Single and 4456 Multi. From what I can tell, Apple slows down phones when their battery gets too low, so you can still have a full days charge. This also means your phone might be very slow for no discernible reason. Check your Geekbench scores and see what you get if your phone is still slow!

27.    Following this Reddit post, John Poole, founder of Primate Labs and Geekbench developer, analyzed data of approximately 100,000 phones with different iOS versions.  He looked at the versions before Apple fixed the "bug" and at versions after Apple fixed the "bug," and discovered that the phone processors slowed down after the system update and that the problem was widespread and "likely to get worse as phones (and their batteries) continue to age."

28.    It took a viral Reddit post and an independent investigation by Poole for Apple to finally admit that Apple had intentionally slowed the performance of older iPhones stating the following on December 20, 2017:

> Our goal is to deliver the best experience for customers, which includes overall performance and prolonging the life of their devices. Lithium-ion batteries become less capable of supplying peak current demands when in cold conditions, have a low battery charge or as they age over time, which can result in the device unexpectedly shutting down to protect its electronic components.

> Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to smooth out the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions. We've now extended that feature to iPhone 7 with iOS 11.2, and plan to add support for other products in the future.

29.    In other words, Apple slowed down the processors in order to avoid overloading the batteries.  While Apple's battery explanation may be legitimate, Apple was anything but forthcoming about the slower speeds until December 20, 2017, and failed to disclose that this

– 6 –

diminished performance could be remedied by replacing the battery in older iPhone and iPad models.

30.    Apple purposefully concealed, fraudulently omitted and/or failed to warn or disclose to owners of the Affected Devices that their iOS updates were intended to limit the maximum performance of some system components when needed to prevent a shutdown due to their degraded batteries.  In doing such, Apple failed to warn or disclose to owners of the Affected Devices that their iOS updates were designed to slow launch times for Apps and inevitably create reductions in the iPhones an iPads' many areas of performance.

31.    Apple purposefully concealed, fraudulently omitted and/or failed to warn or disclose to owners of the Affected Devices that their iOS updates would or could significantly and negatively interfere with the Affected Devices' performance and ordinary functions.

32.    Moreover, Apple repeatedly misrepresented the iOS updates, touting the new software's improvements, bug fixes, and security, while failing to disclose the negative effects of the updates.

33.    Apple also purposefully concealed, fraudulently omitted and/or failed to warn or disclose to owners of the Affected Devices that another contributor to the slowing of their phone performance is and/or was the continued chemical aging of their original and now degraded batteries, and that a battery replacement in older iPhone and iPad models could serve as a better remedy to the problem of phone shutdowns and degraded performance without the further slowing and interfering with the performance of Affected Devices that the iOS updates have caused.

34.    Upon information and belief, Apple does not allow iPhone and iPad owners to revert their iOS updates, including the iOS 10 and iOS 11 updates, to previous, better functioning versions of iOS. The Company also does not warn the consumer that such updates are irreversible.

35.    Thus, following Apple's iOS updates, Plaintiffs and owners the Affected Devices are and/or were forced to either use a slowed and poor performing iPhone and iPad, or pay hundreds of dollars for a new device.

36.    Apple also purposefully concealed, fraudulently omitted and/or failed to disclose to owners of the Affected Devices the fact that a battery replacement – which cost approximately

– 7 –

$65-79 – would improve the performance of older iPhones and iPads in order to require consumers to purchase newer iPhone and iPad models after their Affected Devices had slowed and been prevented from ordinary use.

37.    Had Plaintiffs and putative class members been informed by Apple that a simple battery replacement would have improved the performance of their iPhones and iPads, Plaintiffs would have chosen to replace their batteries which was clearly a more cost effective method rather than upgrading to a new iPhone or iPad that was extremely costly.

38.    In addition, Apple has failed now and in the past to give any explanation as to why their older iPhones and iPads become a lot more sluggish after a new iPhone or iPad model comes out. Apple's admission is evidence of Apple's practice which is intended to get iPhone and iPad users to upgrade to a new iPhones and iPads.

39.    Apple's wrongful actions directly and proximately caused the interference and loss of value to Plaintiffs and members of the proposed class and sub-classes' Affected Devices causing them to suffer economic harm as well as other harm for which they are entitled to compensation. This includes replacement costs of their old iPhones and iPads; loss of use of Affected Devises; loss of Affected Devices' value; purchase of new batteries; ascertainable losses in the form of deprivation of the value of their iPhone and iPad; and overpayment for their iPhones and iPads in that Plaintiffs and members of the proposed class and sub-classes did not receive devices which continued to work as designed at the time of purchase.

## CLASS ALLEGATIONS

40.    Plaintiffs seek relief on behalf of themselves and as representatives of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4), Plaintiffs seek certification of a Nationwide class defined as follows:

> All persons who (1) own or have owned an Affected Device that downloaded and/or installed iOS updates or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of Apple's iOS updates, who purchased or acquired their Affected Devices in the United States and/or while residing in the United States (the "Nationwide Class").

– 8 –

41.     Pursuant to Fed. R. Civ. P. 23, and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiffs assert claims under the laws of the individual States, and on behalf of separate statewide sub-classes, defined as follows:

> All persons who (1) own or have owned an Affected Device that downloaded and/or installed iOS updates or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of Apple's iOS updates, who purchased or acquired their Affected Devices in Arizona and/or while residing in Arizona (the "Arizona Subclass").

> All persons who (1) own or have owned an Affected Device that downloaded and/or installed iOS updates or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of Apple's iOS updates, who purchased or acquired their Affected Devices in the District of Columbia and/or while residing in the District of Columbia (the "District of Columbia Subclass").

> All persons who (1) own or have owned an Affected Device that downloaded and/or installed iOS updates or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of Apple's iOS updates, who purchased or acquired their Affected Devices in California and/or while residing in California (the "California Subclass").

> All persons who (1) own or have owned an Affected Device that downloaded and/or installed iOS updates or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of Apple's iOS updates, who purchased or acquired their Affected Devices in Georgia and/or while residing in Georgia (the "Georgia Subclass").

> All persons who (1) own or have owned an Affected Device that downloaded and/or installed iOS updates or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of Apple's iOS updates, who purchased or acquired their Affected Devices in Hawaii and/or while residing in Hawaii (the "Hawaii Subclass").

> All persons who (1) own or have owned an Affected Device that downloaded and/or installed iOS updates or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of Apple's iOS updates, who purchased or acquired their Affected Devices in Iowa and/or while residing in Iowa (the "Iowa Subclass").

> All persons who (1) own or have owned an Affected Device that downloaded and/or installed iOS updates or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of Apple's iOS updates, who purchased or acquired their Affected Devices in Indiana and/or while residing in Indiana (the "Indiana Subclass").

> All persons who (1) own or have owned an Affected Device that downloaded and/or installed iOS updates or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of Apple's iOS updates, who purchased or acquired their Affected Devices in Maryland and/or while residing in Maryland (the "Maryland Subclass").

– 9 –

All persons who (1) own or have owned an Affected Device that downloaded and/or installed iOS updates or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of Apple's iOS updates, who purchased or acquired their Affected Devices in Massachusetts and/or while residing in Massachusetts (the "Massachusetts Subclass").

All persons who (1) own or have owned an Affected Device that downloaded and/or installed iOS updates or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of Apple's iOS updates, who purchased or acquired their Affected Devices in North Dakota and/or while residing in North Dakota (the "North Dakota Subclass").

All persons who (1) own or have owned an Affected Device that downloaded and/or installed iOS updates or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of Apple's iOS updates, who purchased or acquired their Affected Devices in Utah and/or while residing in Utah (the "Utah Subclass").

All persons who (1) own or have owned an Affected Device that downloaded and/or installed iOS updates or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of Apple's iOS updates, who purchased or acquired their Affected Devices in Washington and/or while residing in Washington (the "Washington Subclass").

All persons who (1) own or have owned an Affected Device that downloaded and/or installed iOS updates or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of Apple's iOS updates, who purchased or acquired their Affected Devices in Wisconsin and/or while residing in Wisconsin (the "Wisconsin Subclass").

42.    Excluded from each of the above Classes are any of Apple's officers, directors and board members; all persons who make a timely election to be excluded from the Class; and the judges to whom this case is assigned and their immediate family.

43.    Plaintiffs hereby reserve the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery.

44.    Each of the proposed Classes meets the criteria for certification under Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) and (c)(4).

45.    Numerosity. Fed. R. Civ. P. 23(a)(1).  Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs believe the proposed Class comprises millions of members. Class members may be identified through objective means. Class members may be notified of the pendency of this action

– 10 –

1  by recognized, Court-approved notice dissemination methods, which may include U.S. mail,

2  electronic mail, internet postings, and/or published notice.

3    46. Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).  Consistent with Fed. R. Civ. P.

4  23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of

5  law and fact that predominate over any questions affecting individual Class members. The

6  common questions include:

7     a. Whether Apple failed to disclose that its iOS updates caused slowdowns in older

8      iPhone and iPad model's performance;

9     b. Whether Apple interfered or otherwise lowered the use or value of older iPhone

10      and iPad models; and

11     c. Whether Apple's iOS modifications were implemented in order to profit from

12      Plaintiffs and other members of the proposed classes by inducing them to purchase

13      new iPhones and iPads to replace their older iPhone and iPad models;

14     d. Whether Apple is subject to liability for fraudulently concealing material facts from

15      Plaintiffs and other members of the proposed classes;

16     e. Whether Apple's conduct constituted deceptive trade practices under state law;

17     f. Whether Apple was unjustly enriched as a result of its fraudulent conduct, such that

18      it would be inequitable for Apple to retain benefits conferred upon it by Plaintiffs

19      and other members of the proposed classes;

20     g. Whether Plaintiffs and the other members of the proposed classes were injured and

21      suffered damages or other acceptable losses because of Apple's fraudulent

22      behavior; and,

23     h. Whether Plaintiffs and other members of the proposed classes are entitled to relief.

24    47. Typicality. Fed. R. Civ. P. 23(a)(3).  Consistent with Fed. R. Civ. P. 23(a)(3),

25  Plaintiffs' claims are typical of those of the other Class members.  Plaintiffs' damages and injuries

26  are akin to the other Class members and Plaintiffs seek relief consistent with the relief of the

27  Class.

28

COMPLAINT
Case No. 18-cv-00241

48.     Adequacy. Fed. R. Civ. P. 23(a)(4). Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing this matter against Apple to obtain relief for the Class.  Plaintiffs have no conflict of interest with the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions, including privacy litigation. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class' interests.

49.     Superiority. Fed. R. Civ. P. 23(b)(3).  Consistent with Fed. R. Civ. P23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the other members of the Classes are relatively small compared to the burden and expense required to individually litigate their claims against Apple, and thus, individual litigation to redress Apple's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

50.     Injunctive and Declaratory Relief. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) and (c). Defendant, through its uniform conduct, has acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

51.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

– 12 –

52.     Finally, all members of the proposed Classes are readily ascertainable by records maintained by Apple.  Using this information, the members of the Class can be identified and their contact information ascertained for purposes of providing notice to the Class.

## COUNT I

### FRAUDULENT CONCEALMENT
**(On Behalf of Plaintiffs and the Nationwide Class, or,
Alternatively, Plaintiffs and the State Classes)**

53.     Plaintiffs incorporate and re-allege the allegations contained in the preceding paragraphs as if fully set forth herein.

54.     Prior to and at the time that Plaintiffs and members of the proposed class and sub-classes decided to purchase an upgraded iPhone or iPad device, Apple knew and had full knowledge and information that its iOS updates would slow down the performance of their older, battery degraded model iPhones and iPads that a simple battery replacement could remedy and improve their performance.

55.     At all relevant times herein Apple, who had a duty to disclose the above information, intentionally concealed and/or failed to disclose the aforementioned material facts to the Plaintiffs and members of the proposed class and sub-classes.

56.     Plaintiffs and members of the proposed class and sub-classes did in fact rely on the Apple's concealment and lack of material disclosure in choosing to install the iOS updates and then electing to purchase new upgraded Affected Devices or other phones or tablets. Plaintiffs and members of the proposed classes were unaware at the time of the purchase of their upgraded Affected Devices that their Affected Devices could have been most cost-efficiently remedied through simple battery replacements.

57.     Had Apple disclosed that their old iPhones could have easily been fixed with a replacement battery, Plaintiffs and members of the proposed class and sub-classes would not have purchased new Affected Devices.

58.     As a direct and proximate cause of the Apple's material omissions, Plaintiffs and members of the proposed class and sub-classes suffered ascertainable losses consisting of the purchase price of new Affected Devices.

– 13 –

**COUNT II**

**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiffs and the Nationwide Class, or,**
**Alternatively, Plaintiffs and the State Classes)**

59.     Plaintiffs incorporate and re-allege the allegations contained in the preceding paragraphs as if fully set forth herein.

60.     Plaintiffs' and members of the proposed class and sub-classes entered into implied contracts with Apple, when they purchased their Affected Devices, to which Apple agreed to not purposefully interfere with Plaintiffs and members of the proposed class and sub-classes' usage or speed.

61.     Plaintiffs and members of the proposed class and sub-classes fully performed their obligations under the implied contracts with Apple.

62.     Defendant breached the implied contracts it had made with the Plaintiffs and members of the proposed class and sub-classes by purposefully slowing down older iPhone models and iPad models when new models came out and by failing to properly disclose the material effects of iOS updates at the time the parties entered into an agreement.

63.     The damages to Plaintiffs and members of the proposed class and sub-classes as described herein were the direct and proximate result of the Defendants' breaches of these implied contracts.

**COUNT III**

**VIOLATION OF ARIZONA CONSUMER FRAUD ACT,**
**A.R.S. §§ 44-1521, *ET SEQ*.**
**(Asserted by the Arizona Subclass)**

64.     Plaintiff Ryan Banks ("Plaintiff," for purposes of this Count), individually and on behalf of the other Arizona Subclass Members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

65.     Apple operating in Arizona engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of "merchandise" (as defined in Arizona Consumer Fraud Act, A.R.S. § 44-1521(5)) in violation of A.R.S. § 44-1522(A), including, but not limited to, its failure

– 14 –

to disclose that (a) it was purposefully slowing down the performance speed the Affected Devices and/or that (b) a battery replacement would improve the performance of the Affected Devices.

66.    The above unfair and deceptive practices and acts by Apple were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Arizona Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

67.    Apple knew or should have known that engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Arizona Subclass.

68.    As a direct and proximate result of Apple's unlawful practices, Arizona Subclass Members suffered injury and/or damages.

69.    Plaintiff and Arizona Subclass Members seek relief under A.R.S. §§ 4421, *et seq*., including, but not limited to, compensatory damages, punitive damages, injunctive relief, and/or attorneys' fees and costs.

## COUNT IV

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*
#### (Asserted by the California Subclass)

70.    Plaintiff Anna Luna ("Plaintiff," for purposes of this Count), individually and on behalf of the other California Subclass Members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

71.    Apple's acts and practices, as alleged in this complaint, constitute unfair, unlawful and fraudulent business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

72.    Apple has engaged and continues to engage in an unfair business practice by including code in iOS updates designed in part to materially diminish performance speed of the Affected Devices, and by purposefully failing to disclose that performance could be restored by simply changing the battery.

– 15 –

73.    Apple's business practices are unscrupulous, unethical, and substantially injurious to consumers.  There is no legitimate business reason for Apple's business practice such that the utility of its business practice outweighs the harm to consumers.  Furthermore, Apple's business practice undermines this State's fundamental policy against unfair and sharp business practices that are likely to deceive or mislead consumers, and which undercut trust and fair competition in the consumer marketplace.

74.    Plaintiff and California Subclass Members relied upon Apple's material omissions in downloading and installing the iOS updates. Had Plaintiff and California Subclass Members known of the concealed material information, they would not have downloaded or installed the iOS updates which damaged their Affected Devices and/or would have purchased new device batteries to prevent the current and future harm they have or will suffer as a result of the device's condition.

75.    Plaintiff also has standing to challenge Defendants' unfair, unlawful and fraudulent business practices on behalf of the public pursuant to California Business and Professions Code § 17204, since, as a result of such practices, she has suffered injury in fact and lost money or property in the form of reduced value of the Affected Devices.

76.    On behalf of the proposed class, Plaintiff hereby seeks money damages and restitution in an amount to be determined at trial.

77.    On behalf of the proposed class, Plaintiff also hereby seeks entry of appropriate equitable relief pursuant to California Business & Professions Code § 17203, including an injunction prohibiting Defendant from engaging in the same or similar unfair business practices in the future, civil penalties, restitution of money that may have been acquired by Defendants' unfair business practices, and attorney's fees and costs of litigation.  The entry of injunctive relief is of particular importance, and necessary to secure a fair consumer marketplace.

– 16 –

1

## COUNT V

2

**VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT,**
**CAL. CIV. CODE §§ 1750, *ET SEQ*.**
**(Asserted by the California Subclass)**

3

4     78.    Plaintiff Anna Luna ("Plaintiff," for purposes of this Count), individually and on

5     behalf of the other California Subclass Members, repeats and alleges the allegations contained in

6     the preceding paragraphs as if fully set forth herein.

7     79.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") is

8     a comprehensive statutory scheme that prohibits deceptive practices in connection with the

9     conduct of businesses providing goods, property or services to consumers primarily for personal,

10    family, or household use.

11    80.    Apple is a "person" as defined by Civil Code § 1761(c) and it provides "goods"

12    within the meaning of Civil code section 1761(a) and 1770.

13    81.    Plaintiff and California Subclass Members are "consumers" within the meaning of

14    Civil Code § 1761(d).

15    82.    Apple's sales of goods to Plaintiff and California Subclass Members constitute

16    "transactions" which were "intended to result or which result[ed]" in the sale of goods to

17    consumers within the meaning of Civil Code §1761 (e).

18    83.    Plaintiff has standing to pursue this claim as she has suffered injury in fact and has

19    lost money as a result of Apple's actions as set forth herein.

20    84.    Apple operating in California has violated the CLRA by engaging in unlawful,

21    unfair and deceptive practices as defined in Civil Code § 1770 with respect to the products

22    provided to Plaintiff and the California Subclass, including, but not limited to, its failure to

23    disclose that (a) it was purposefully slowing down the performance speed of the Affected Devices

24    and/or that (b) a battery replacement would improve the performance of the Affected Devices.

25    85.    The above unfair and deceptive practices and acts by Apple were immoral,

26    unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and

27    California Subclass Members that they could not reasonably avoid; this substantial injury

28    outweighed any benefits to consumers or to competition.

– 17 –

86.     Apple knew or should have known that its iOS updates would slow down the performance of the Affected Devices and that a simple battery replacement would improve the performance of the Affected Devices.

87.     Plaintiff and California Subclass Members relied upon Apple's material omissions in downloading and installing the iOS updates. Had Plaintiff and California Subclass Members known of the concealed material information, they would not have downloaded or installed the iOS updates which damaged their Affected Devices and/or would have purchased new device batteries to prevent the current and future harm they have or will suffer as a result of the device's condition.

88.     As a result of Apple's acts and practices alleged herein, Plaintiff and California Subclass Members suffered actual damages.

89.     Plaintiff and California Subclass Members are entitled to equitable relief as the damages incurred could require Plaintiff and other California Subclass Members to purchase new devices and/or new batteries at their cost.

90.     On January 10, 2018, Plaintiff sent a pre-suit demand letter to Apple by Certified Mail, Return Receipt Requested, providing it with written notice of its alleged violations of the CLRA pursuant to California Civil Code section 1782(a) and requested that Defendant correct or agree to correct the violations enumerated and reimburse Plaintiff and the class for any damages suffered.  If Defendant fails to do so, Plaintiff Luna intends to amend the complaint as of right (or otherwise seek leave to amend the complaint) to include compensatory, monetary damages and punitive damages, in addition to the injunctive and equitable relief that Plaintiff seeks now.

## COUNT VI

**VIOLATION OF DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT, D.C. CODE §§ 28-3904, *ET SEQ.*
(Asserted by the District of Columbia Subclass)**

91.     Plaintiff Lauren Weintraub ("Plaintiff," for purposes of this Count), individually and on behalf of the other District of Columbia Subclass Members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

– 18 –

92.     As defined by D.C. Code § 28-3901, District of Columbia Subclass Members are "consumers" who purchased or received goods or services, in the form of insurance and benefits services, for personal, household, or family purposes.

93.     Apple operating in the District of Columbia engaged in unlawful trade practices, misrepresentations, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of goods and services in violation of D.C. Code § 28-3904, including, but not limited to, its failure to disclose that (a) it was purposefully slowing down the performance speed of the Affected Devices and/or that (b) a battery replacement would improve the performance of the Affected Devices.

94.     The above unfair and deceptive practices and acts by Apple were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and District of Columbia Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

95.     Apple knew or should have known that its iOS updates would slow down the performance of the Affected Devices and that a simple battery replacement would improve the performance of the Affected Devices. Apple's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the District of Columbia Subclass.

96.     As a direct and proximate result of Apple's unlawful practices, District of Columbia Subclass Members suffered injury and/or damages.

97.     Plaintiff and District of Columbia Subclass Members seek relief under D.C. Code § 28-3905(k), including, but not limited to, restitution, injunctive relief, punitive damages, attorneys' fees and costs, and treble damages or $1500 per violation, whichever is greater.

– 19 –

## COUNT VII

**GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT,
GA. CODE ANN. §§ 10-1-370, *ET SEQ.*
(Asserted by the Georgia Subclass)**

98.    Plaintiff Allison Varnell ("Plaintiff," for purposes of this Count), individually and on behalf of the other Georgia Subclass Members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

99.    Apple, Plaintiff, and Georgia Subclass Members are "persons" within the meaning of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code Ann. § 10-1-371(5).

100.    The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code Ann. § 10-1-372(a).

101.    In the course of its business, Apple willfully failed to disclose and actively concealed the negative effects of its iOS updates and optimal remedies for battery degradation as discussed herein, and otherwise engaged in activities with a tendency or capacity to deceive.

102.    Apple also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of material facts with intent that others rely upon such concealment, suppression, or omission, in connection with its failure to disclose that (a) it was purposefully slowing down the performance speed of the Affected Devices and/or that (b) a battery replacement would improve the performance of the Affected Devices.

103.    By way of the foregoing, Apple engaged in deceptive business practices in violation of the Georgia UDTPA.

104.    Apple's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and Georgia Subclass.

105.    Apple intentionally and knowingly misrepresented such material facts with intent to mislead Plaintiff and Georgia Subclass Members.

– 20 –

106. Apple knew or should have known that its conduct violated the Georgia UDTPA.

107. As alleged above, Apple made material statements that were either false or misleading.

108. Apple owed Plaintiff and Georgia Subclass Members a duty to disclose the true facts regarding its iOS updates because Apple possessed exclusive knowledge regarding the updates and intentionally concealed the foregoing from Plaintiff and Georgia Subclass Members.

109. Apple's representations and omissions were material to Plaintiff and Georgia Subclass Members.

110. Plaintiff and Georgia Subclass Members suffered ascertainable loss caused by Apple's misrepresentations and its concealment of and failure to disclose material information as alleged herein.

111. Apple had an ongoing duty to all Apple customers, including Plaintiff and Georgia Subclass Members, to refrain from unfair and deceptive practices under the Georgia UDTPA.

112. Apple's violations present a continuing risk to Plaintiff and Georgia Subclass Members, as well as to the general public.

113. Apple's unlawful acts and practices complained of herein affect the public interest.

114. As a direct and proximate result of Apple's violations of the Georgia UDTPA, Plaintiff and Georgia Subclass Members have suffered injury-in-fact and/or actual damage.

115. Plaintiff and Georgia Subclass Members seek an order enjoining Apple's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per Ga. Code Ann. § 10-1-373.

## COUNT VIII

### HAWAII UNFAIR PRACTICES AND UNFAIR COMPETITION STATUTE, HAW. REV. STAT. §§ 480-1, *ET SEQ.* (Asserted by the Hawaii Subclass)

116. Plaintiff Amy Brown ("Plaintiff," for purposes of this Count), individually and on behalf of the other Hawaii Subclass Members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

117.    Hawaii Subclass Members are "consumers" within the meaning of Haw. Rev. Stat. § 480-1.

118.    Hawaii Subclass Members purchased "goods and services" from Apple as meant by Haw. Rev. Stat. § 480-1.

119.    Hawaii Subclass Members' purchases of goods and services from Apple were for personal, family, and/or household purposes, under Haw. Rev. Stat. § 480-1.

120.    Apple, while operating in Hawaii, engaged in unfair methods of competition, unfair or deceptive acts or practices, misrepresentations, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the goods and services purchased by Hawaii Subclass Members in violation of Haw. Rev. Stat. § 480-2(a), including but not limited to its failure to disclose that (a) it was purposefully slowing down the performance speed of the Affected Devices and/or that (b) a battery replacement would improve the performance of the Affected Devices.

121.    The above unfair and deceptive practices and acts by Apple were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Hawaii Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

122.    Apple knew or should have known that its iOS updates would slow down the performance of their older model iPhones and that a simple battery replacement would improve the performance of its Affected Devices. Apple's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Hawaii Subclass.

123.    As a direct and proximate result of Apple's unlawful practices, Hawaii Subclass Members suffered injury and/or damages.

124.    Plaintiff and Hawaii Subclass Members seek relief under Haw. Rev. Stat. § 480-13, including, but not limited to, damages, injunctive relief, attorneys' fees and costs, and treble damages.

<u>**COUNT IX**</u>

**VIOLATIONS OF INDIANA'S DECEPTIVE CONSUMER SALES ACT**
**(Asserted by the Indiana Subclass)**

125.    Plaintiff Jessica Greenshner ("Plaintiff," for purposes of this Count), individually and on behalf of the other Indiana Subclass Members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

126.    The purposes and policies of the Indiana Deceptive Consumer Sales Act (the "DCSA" or the "Act"), Indiana Code § 24-5-0.5-1 to -12, are to:

(1)    simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices;

(2) protect consumers from suppliers who commit deceptive and unconscionable consumer sales practices; and

(3) encourage the development of fair consumer sales practice.

Ind. Code § 24-5-0.5-1(b).

127.    The Indiana General Assembly has instructed courts to construe the DCSA liberally to promote these purposes and policies. Ind. Code § 24-5-0.5-1(a).

128.    Apple is a "supplier" as defined in the DCSA because it is a seller or other person who regularly engages in or solicits consumer transactions, which are defined to include sales of personal property, services, and intangibles that are primarily for a personal, familial, or household purpose, such as those at issue in this action. Ind. Code § 24-5-0.5-2(1), (3).

129.    The DCSA provides that "[a] supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of [the DCSA] whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." Ind. Code § 24-5-0.5-3(a).

130.    Apple committed deceptive acts as described above, including, but not limited, to its failure to disclose that (a) it was purposefully slowing down the performance speed of the Affected Devices and/or that (b) a battery replacement would improve the performance of the Affected Devices.

– 23 –

131.    Apple's violations were willful and were done as part of a scheme, artifice, or device with intent to defraud or mislead, and therefore are incurable deceptive acts under the DCSA. The violations were formulated and carried out by Apple as part of a business model focused on driving sales of newer model iPhones and iPads.

132.    Plaintiff and Indiana Subclass Members suffered ascertainable loss caused by Apple's misrepresentations and its concealment of and failure to disclose material information as alleged herein.

133.    As a direct and proximate result of Apple's violations of the DCSA, Plaintiff and Indiana Subclass Members have suffered injury-in-fact and/or actual damage.

134.    The DCSA provides that "[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand ($1,000). Ind. Code § 24-5-0.5-4(a)

135.    The DCSA provides that "[a]ny person who is entitled to bring an action under subsection (a) on the person's own behalf against a supplier for damages for a deceptive act may bring a class action against such supplier on behalf of any class of persons of which that person is a member . . . ." Ind. Code § 24-5-0.5-4(b).

## COUNT X

### IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT, IOWA CODE § 714H
### (Asserted by the Iowa Subclass)

136.    Plaintiff Matthew Homonoff ("Plaintiff," for purposes of this Count), individually and on behalf of the other Iowa Subclass Members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

137.    The Iowa Private Right of Action for Consumer Frauds Act prohibits unfair and deceptive trade practices in the sale, lease, or advertisement of a product or service, and in the solicitation of charitable contributions. The Iowa Private Right of Action for Consumer Frauds

– 24 –

Act's purpose is to protect consumers against these unfair and deceptive business practices and provide efficient and economical procedures to secure such protection.

138.    Apple operating in Iowa has violated the Act by engaging in the unfair and/or deceptive acts and practices described herein, which were and are intended to and did and do result in the purchase of Apple's products and services by consumers, including Plaintiff and Iowa Subclass Members.

139.    Plaintiff is providing the requisite notice to the Iowa Attorney General, and intends to seek approval for inclusion of the consumer protection claim after the office has approved the filing of this class action lawsuit pursuant to Iowa Code § 714H.7; and therefore, the assertion of this claim is subject to that approval.

140.    As a result of Apple's unfair and/or deceptive business practices, Plaintiff and Iowa Subclass Members have lost money or property and therefore seek their actual damages.

141.    Plaintiff and Iowa Subclass Members also seek and are entitled to an order enjoining Apple from continuing to engage in the unfair and deceptive business practices alleged herein.

### COUNT XI

**MARYLAND CONSUMER PROTECTION ACT,**
MD. Code Ann., Com. Law §§ 13-301, *et seq.*
**(Asserted by the Maryland Subclass)**

142.    Plaintiff Robert Montgomery ("Plaintiff," for purposes of this Count), individually and on behalf of the other Maryland Subclass Members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

143.    Maryland Subclass Members are "consumers" under Md. Code Ann., Com. Law § 13-101.

144.    The goods and services that are the subject of this complaint are "consumer goods" and/or "consumer services" under Md. Code Ann., Com. Law § 13-101.

145.    The unlawful trade practices, misrepresentations, and omissions described herein did not constitute "professional services" on the part of Apple.

– 25 –

146.    Apple operating in Maryland engaged in unlawful trade practices, misrepresentations, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of its goods and services in violation of Md. Code Ann., Com. Law § 13-301, including but not limited to its failure to disclose that (a) it was purposefully slowing down the performance speed of the Affected Devices and/or that (b) a battery replacement would improve the performance of the Affected Devices.

147.    The above unfair and deceptive practices and acts by Apple were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Maryland Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

148.    Apple knew or should have known that its iOS updates would slow down the performance of the Affected Devices and that a simple battery replacement would improve the performance of the Affected Devices.  Apple's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Maryland Subclass.

149.    As a direct and proximate result of Apple's unlawful practices, Maryland Subclass Members suffered injury and/or damages.

150.    Plaintiff and Maryland Subclass Members seek relief under Md. Code Ann., Com. Law § 13-408, including, but not limited to, damages, injunctive relief, and attorneys' fees and costs.

### COUNT XII

**MASSACHUSETTS CONSUMER PROTECTION ACT,**
MASS. Gen. Laws Ann. Ch. 93A, §§ *et seq*.
**(Asserted by the Massachusetts Subclass)**

151.    Plaintiff Laura Ciccone ("Plaintiff," for purposes of this Count), individually and on behalf of the other Massachusetts Subclass Members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

– 26 –

152.   Plaintiff sent a written demand for relief on behalf of the Massachusetts Subclass pursuant to Mass. Gen. Laws Ann. ch. 93A § 9(3) on January 10, 2018 and will amend this complaint after 30 days.

153.   Apple operated in "trade or commerce" under Mass. Gen. Laws Ann. Ch. 93A, § 1.

154.   Apple operating in Massachusetts engaged in deceptive and unfair acts and practices, misrepresentations, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of goods and services in violation of Mass. Gen. Laws Ann. ch. 93A, § 2(a), including, but not limited to, its failure to disclose that (a) it was purposefully slowing down the performance speed of the Affected Devices and/or that (b) a battery replacement would improve the performance of the Affected Devices.

155.   The above unfair and deceptive practices and acts by Apple were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Massachusetts Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.  These acts were within the penumbra of common law, statutory, or other established concepts of unfairness. Apple knew or should have known that its iOS upgrades were purposely slowing down the processing on the Affected Devices.  Apple's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Massachusetts Subclass.

156.   As a direct and proximate result of Apple's unlawful practices, Massachusetts Subclass Members suffered injury and/or damages.

157.   Plaintiff and Massachusetts Subclass Members seek relief under Mass. Gen. Laws Ann. ch. 93A, § 9, including, but not limited to, actual damages, double or treble damages, injunctive and/or other equitable relief, and/or attorneys' fees and costs.

– 27 –

# COUNT XIII

## NORTH DAKOTA UNLAWFUL SALES OR ADVERTISING ACT,
## *N.D.* CENT. CODE §§ 51-10-01, *ET SEQ.*
## (Asserted by the North Dakota Subclass)

158.    Plaintiff Matthew Shaske ("Plaintiff," for purposes of this Count), individually and on behalf of the other North Dakota Subclass Members, repeats and alleges Paragraphs 1-63 as if fully alleged herein.

159.    Apple sells and advertises "merchandise," as meant by N.D. Cent. Code § 51-15-01, in the form of its goods and services.

160.    Apple operating in North Dakota engaged in deceptive acts and practices, misrepresentations, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of goods and services in violation of N.D. Cent. Code § 51-15-01 including but not limited to its failure to disclose that (a) it was purposefully slowing down the performance speed of the Affected Devices and/or that (b) a battery replacement would improve the performance of the Affected Devices.

161.    The above deceptive acts and practices by Apple were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and North Dakota Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

162.    Apple knew or should have known that its iOS updates would slow down the performance of the Affected Devices and that a simple battery replacement would improve the performance of the Affected Devices.  Apple's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the North Dakota Subclass.

163.    As a direct and proximate result of Apple's deceptive acts and practices, Apple acquired money or property from North Dakota Subclass Members.

164.    Plaintiff and North Dakota Subclass Members seek relief under N.D. Cent. Code Ann. § 51-15-09, including, but not limited to, injunctive relief, damages, restitution, treble damages, and attorneys' fees and costs.

– 28 –

## COUNT XIV

**UTAH CONSUMER SALES PRACTICES ACT,**
**UTAH CODE §§ 13-11-1, *ET SEQ.***
**(Asserted by the Utah Subclass)**

165.　Plaintiff Annamarie Vinacco, ("Plaintiff," for purposes of this Count), individually and on behalf of the other Utah Subclass Members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

166.　The actions described above involved "consumer transactions" within the meaning of Utah Code § 13-11-1(2).

167.　Apple is a "supplier" within the meaning of Utah Code § 13-11-1(6).

168.　Apple operating in Utah engaged in deceptive trade practices in connection with consumer transactions, including by representing that its goods and services had characteristics that they did not have and representing that its services were of a particular standard or quality when they were not, in violation of Utah Code § 13-11-4. This includes to its failure to disclose that (a) its iOS updates were purposefully slowing down the performance speed of the Affected Devices and/or that (b) a battery replacement would improve the performance of the Affected Devices.

169.　As a direct and proximate result of Apple's practices, Utah Subclass Members suffered injury and/or damages.

170.　The above unfair and deceptive acts and practices by Apple were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Utah Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

171.　The above acts were also unconscionable acts or practices by a supplier in violation of Utah Code § 13-11-5.

172.　Apple knew or should have known that its iOS updates would slow down the performance of the Affected Devices and that a simple battery replacement would improve the performance of the Affected Devices.　Apple's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing, willful and/or wanton and reckless.

– 29 –

173.   Plaintiff and Utah Subclass Members seek all available relief under Utah Code §§ 13-11-1, *et seq.*, including, but not limited to, actual damages, civil penalties, injunctive relief, and attorneys' fees and costs.

## COUNT XV

**WASHINGTON CONSUMER PROTECTION ACT,**
Wash. Rev. Code Ann. §§ 19.86.020, *et seq.*
**(Asserted by the Washington Subclass)**

174.   Plaintiff Thomas Ciccone ("Plaintiff," for purposes of this Count), individually and on behalf of the other Washington Subclass Members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

175.   Apple operating in Washington engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of Wash. Rev. Code Ann. § 19.86.020, including but not limited to its failure to disclose that (a) it was purposefully slowing down the performance speed of the Affected Devices and/or that (b) a battery replacement would improve the performance of the Affected Devices.

176.   As a direct and proximate result of Apple's deceptive trade practices, Washington Subclass Members suffered injury and/or damages.

177.   The above unfair and deceptive practices and acts by Apple were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Washington Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

178.   Apple knew or should have known that that its iOS updates would slow down the performance of the Affected Devices and that a simple battery replacement would improve the performance of the Affected Devices.  Apple's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Washington Subclass.

179.   Plaintiff and Washington Subclass Members seek relief under Wash. Rev. Code Ann. § 19.86.090, including, but not limited to, actual damages, treble damages, injunctive relief, and attorneys' fees and costs.

**COUNT XVI**

**WISCONSIN DECEPTIVE TRADE PRACTICES ACT,
WIS. STAT. § 100.18
(Asserted by the Wisconsin Subclass)**

180.    Plaintiff Dale Johnson ("Plaintiff," for purposes of this Count), individually and on behalf of the other Wisconsin Subclass Members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

181.    Apple is a "person, firm, corporation or association" under Wis. Stat. § 100.18(1).

182.    Plaintiff and Wisconsin Subclass Members are members of "the public" under Wis. Stat. § 100.18(1).

183.    Plaintiff and Wisconsin Subclass Members were deceived as described herein and have suffered damages as a result.

184.    Apple operating in Wisconsin willfully failed to disclose and actively concealed that its iOS updates would slow down the performance of the Affected Devices and that a simple battery replacement would improve the performance of the Affected Devices and otherwise engaged in activities with a tendency or capacity to deceive.

185.    By failing to disclose that its iOS updates would slow down the performance of the Affected Devices and that a simple battery replacement would improve the performance of the Affected Devices, Apple engaged in deceptive business practices in violation of Wis. Stat. § 100.18.

186.    Apple's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and Wisconsin Subclass Members.

187.    Apple intentionally and knowingly misrepresented material facts that its iOS updates would slow down the performance of the Affected Devices and that a simple battery replacement would improve the performance of the Affected Devices with an intent to mislead Plaintiff and Wisconsin Subclass Members.

188.    Apple knew or should have known that its conduct violated Wis. Stat. § 100.18.

189.    Apple owed Plaintiff and Wisconsin Subclass Members a duty to disclose the true nature of its iOS updates and battery replacement issue because Apple:

– 31 –

a.   Possessed exclusive knowledge regarding the iOS updates and battery replacement issue;

b.   Intentionally concealed the foregoing from Plaintiff and Wisconsin Subclass Members; and/or

c.   Made incomplete representations about the iOS updates, while purposefully withholding material facts from Plaintiff and Wisconsin Subclass Members that contradicted these representations.

190.   Apple's fraudulent claims related to its iOS updates and the true nature of the problems related to the Affected Devices were material to Plaintiff and Wisconsin Subclass Members.

191.   Plaintiff and Wisconsin Subclass Members suffered ascertainable loss caused by Apple's misrepresentations and its concealment of and failure to disclose material information. Subclass Members would not have had upgraded their Affected Devices.

192.   Apple had an ongoing duty to all Apple customers to refrain from unfair and deceptive practices under Wis. Stat. § 100.18.

193.   All Wisconsin Subclass Members suffered ascertainable loss caused by Apple's misrepresentations and its concealment of and failure to disclose material information. Apple's violations present a continuing risk to Plaintiff and Wisconsin Subclass Members as well as to the general public.

194.   Apple's unlawful acts and practices complained of herein affect the public interest.

195.   As a direct and proximate result of Apple's violations of Wis. Stat. § 100.18, Plaintiff and Wisconsin Subclass Members have suffered injury-in fact and/or actual damage.

196.   Plaintiff and Wisconsin Subclass Members are entitled to damages and other relief provided for under Wis. Stat. § 100.18(11)(b)(2).

197.   Because Apple's conduct was committed knowingly and/or intentionally, Plaintiff and Wisconsin Subclass Members are entitled to treble damages.

198.   Plaintiff and Wisconsin Subclass Members also seek court costs and attorneys' fees under Wis. Stat. § 100.18(11)(b)(2).

– 32 –

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all members of the proposed classes in this Complaint, respectfully requests that the Court enter judgment in their favor and against Apple as follows:

A.    For an Order certifying the Classes, as defined herein, and appointing Plaintiffs and their Counsel to represent the Nationwide Class, and/or the separate Statewide Classes;

B.    For an award of damages, as allowed by law in an amount to be determined;

C.    For an award of attorneys' fees costs and litigation expenses, as allowable by law;

D.    For prejudgment interest on all amounts awarded; and

E.    Such other and further relief as this court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 10, 2018                  **STULL, STULL & BRODY**

By:  */s/ Patrice L. Bishop*
Patrice L. Bishop
9430 West Olympic Blvd., Suite 400
Beverly Hills, CA 90212
Tel:    (310) 209-2468
Fax:    (310) 209-2087
Email:  pbishop@ssbla.com

Melissa R. Emert, Esq.
**STULL, STULL & BRODY**
6 East 45th Street
New York, NY 10017
Tel:    (212) 687-7230
Fax:    (212) 490-2022
Email:  memert@ssbny.com

Gary S. Graifman, Esq.
Jay Brody, Esq.
KANTROWITZ GOLDHAMER &
    GRAIFMAN, P.C.
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel:    (845) 356-2570
Fax:    (845) 356-4335
Email:  ggraifman@kgglaw.com
            jbrody@kgglaw.com

*Counsel for Plaintiffs*

– 33 –

COMPLAINT
Case No. 18-cv-00241